UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VERMONT MUTUAL INSURANCE CO., as subrogee of Barbara and Gregory Sanders | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:24-cv-10940-ADB |
| CANON U.S.A., INC., | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this subrogation action, Plaintiff Vermont Mutual Insurance Co. ("Vermont Mutual"), a Vermont-based insurance company, seeks to recover damages arising from a house fire allegedly ignited by a printer manufactured by Defendant Canon U.S.A., Inc. ("Canon"). Before the Court are (1) Canon's motion to preclude the opinions of Vermont Mutual's expert witnesses, and (2) Canon's motion for summary judgment on all claims. [ECF No. 30]. For the following reasons, Canon's motion to preclude is **GRANTED IN PART** and **DENIED IN PART**, and its motion for summary judgment is **DENIED**.

## I. BACKGROUND

### A. Factual Background

Except as otherwise noted, the following facts are undisputed.

At some point before 2021, Barbara and Gregory Sanders, Massachusetts residents, purchased a homeowner's insurance policy from Vermont Mutual that covered a house in

Plymouth, Massachusetts (the "Plymouth House"). [ECF No. 34 ¶ 2]. While residing at the Plymouth House in late 2020, Ezio Valerius, Barbara and Gregory Sanders's son, purchased a used PIXMA Pro 100 printer manufactured by Canon (the "Printer") from a seller on Facebook Marketplace. [Id. ¶ 3]. He did not know the seller, and Mr. Valerius has since deleted his Facebook account. [Id. ¶¶ 5, 8]. Mr. Valerius testified that the Printer appeared to be in "pristine" condition at the time of purchase. [ECF No. 33-7 at 3–4]. He subsequently set the Printer up in an unfinished basement at the Plymouth House that he used as a home gym, [ECF No. 34 ¶ 3], and the Printer worked without issue, [ECF No. 33-7 at 3–4].

On February 4, 2021, a fire broke out at the Plymouth House, causing property damage. [ECF No. 34 ¶ 6]. When the Marshfield Fire Department arrived, it observed smoke coming from the basement where the Printer was kept. [Id. ¶ 7]. According to the fire department's incident report, "It appeared that a printer under a work bench ignited and caused extensive heat and smoke damage throughout the house." [Id.]. Vermont Mutual alleges, and Canon does not appear to contest, that the Sanders submitted a homeowner's insurance claim in connection with the fire and received $1,130,691.10 from Vermont Mutual for the damage to their property. [ECF No. 1-1 ¶¶ 7–9]. Vermont Mutual further alleges, and Canon does not appear to contest, that it "stands subrogated to the rights of its insured to the extent of said payments." [Id. ¶ 9].

**B. Procedural Background**

Vermont Mutual filed this action in Massachusetts state court on January 29, 2024, as subrogee of its policyholders Barbara and Gregory Sanders. [ECF No. 1-1 at 3, 5]. Vermont Mutual asserts claims for negligence and breach of warranty against Canon under Massachusetts law, alleging that the Printer caused the February 4, 2021, fire due to negligent and defective manufacturing. [Id. ¶¶ 5–19]. On April 11, 2024, Canon removed the action to this Court,

invoking diversity jurisdiction, [ECF No. 1], and the next day filed an answer in which it denied Vermont Mutual's claims, [ECF No. 4]. The Court entered a scheduling order on June 14, 2024, and the parties engaged in fact discovery through early 2025. [ECF No. 14]; [ECF No. 15].

The parties exchanged expert reports in June 2025. [ECF No. 34 ¶ 12]. Between them, Vermont Mutual's three retained experts concluded that: (1) the origin of the fire was the Printer, [ECF No. 31-8 at 3, 15–16], (2) other than the Printer, no ignition sources in the home gym area of the Plymouth House's basement could have caused the fire, [ECF No. 34 ¶¶ 24–25], and (3) the source of ignition within the Printer was "likely a component failure, particularly of the C6 electrolytic capacitor" within the Printer's circuit board, [id. ¶ 18]. Canon disputes at least some of these conclusions, though it is unclear whether it disputes all of them. See [ECF No. 32 at 5–10]. None of Vermont Mutual's experts offered a conclusive opinion as to a specific manufacturing defect in the Printer that they contend caused the component failure leading to the fire. See [ECF No. 31-4 at 3–4]; [ECF No. 31-5 at 5]; [ECF No. 31-6 at 16–18].

One of Vermont Mutual's experts, Christopher Swan, submitted a report in which he examined potential alternative ignition sources and ruled them out, concluding that he "[could] rule out all the evidence . . . as a cause for this fire except for the Canon printer." [ECF No. 34 ¶¶ 24–25 (second alteration in original)]. Mr. Swan did not opine in his report as to the specific mechanism by which the printer ignited, [ECF No. 31-9 at 48–50], and he later testified in his deposition that in his report he "was only eliminating the external evidence as being a cause," [ECF No. 31-6 at 14]. At the same deposition, however, Mr. Swan testified that, based on "additional information" he had obtained over the weekend before his deposition, he further believed that the origin of the fire "appears to be a failure of the C6 capacitor." [Id. at 5–6, 8].

Canon filed the present motions on September 26, 2025, [ECF No. 30], Vermont Mutual filed an opposition on October 14, 2025, [ECF No. 33], and Canon filed a reply on October 28, 2025, [ECF No. 35].

## II. MOTION TO PRECLUDE EXPERT TESTIMONY

Because Canon's motion to preclude expert testimony "affect[s] the information the court may consider in deciding the motion for summary judgment," the Court will consider it first. Facey v. Dickhaut, 91 F. Supp. 3d 12, 21 (D. Mass. 2014).

### A. Legal Standard

#### 1. Timeliness of Expert Opinions

Under the Federal Rules of Civil Procedure, an expert witness whose testimony a party wishes to use must submit a written report at a time ordered by the Court that contains, inter alia, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Further, a failure to timely disclose an opinion as required by Rule 26(a) necessitates exclusion of the untimely-disclosed opinion "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); see Alifax Holding SpA v. Alcor Sci. Inc., 387 F. Supp. 3d 170, 175 (D.R.I. 2019) (citing Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001)) ("Exclusion is the presumptive sanction for such a violation."). "Preclusion, however, 'is not a strictly mechanical exercise,'" and "in its discretion, the district court may choose a less severe sanction." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77–78 (1st Cir. 2009) (quoting Santiago-Díaz v. Laboratorio Clínico Y De Referencia Del Este, 456 F.3d 272, 276 (1st Cir. 2006)). "Rules 26(a) and 37(c)(1) seek to prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion," which could "potentially deprive a [party] of the opportunity to 'depose the proposed expert, challenge his

credentials, solicit expert opinions of [its] own, or conduct expert-related discovery.'" Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004) (quoting Lohnes, 272 F.3d at 60). "Although Rule 37(c)(1) is traditionally invoked to preclude expert testimony at trial, it can also be applied to motions for summary judgment." Id.

**2. Reliability of Expert Opinions**

Requests to exclude expert testimony on reliability grounds are governed by Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Federal Rule of Evidence 702 provides that a person

> who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if[:]
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Under Federal Rule of Evidence 702 and [Daubert], trial judges must act as gatekeeper to 'insur[e] that the fact-finding process does not become distorted by expertise that is fausse and science that is junky.'" Neural Magic, Inc. v. Meta Platforms, Inc., 659 F. Supp. 3d 138, 152 (D. Mass. 2023) (second alteration in original) (internal quotation marks omitted) (quoting Fed. Ins. Co. v. Pentair Residential Filtration, LLC, No. 12-cv-10853, 2013 WL 6145531, at *3 (D. Mass. Nov. 21, 2013)). "[J]udge[s] must . . . determine whether the witness is sufficiently qualified by 'knowledge, skill, experience, training, or education' to give his proffered opinion." Id. (quoting

Fed. Ins. Co., 2013 WL 6145531, at *3). "If the witness is deemed qualified, the judge must next determine whether the specific testimony offered in the case 'both rests on a reliable foundation and is relevant to the task at hand.'" Id. (quoting In re Nexium (Esomeprazole) Antitrust Litig., 842 F.3d 34, 52 (1st Cir. 2016)). "The reliable foundation requirement necessitates an inquiry into the methodology and the basis for an expert's opinion." Id. (quoting Samaan v. St. Joseph Hosp., 670 F.3d 21, 31 (1st Cir. 2012)). "The relevancy requirement 'seeks to ensure that there is an adequate fit between the expert's methods and his conclusions' by determining whether the expert's conclusions 'flow rationally from the methodology employed.'" Id. (quoting Samaan, 670 F.3d at 32). "[A] court may exclude an expert's opinion when it is based upon conjecture or speculation deriving from an insufficient evidentiary source." E.E.O.C. v. Tex. Roadhouse, Inc., 215 F. Supp. 3d 140, 158 (D. Mass. 2016) (citing United States v. Organon USA Inc., No. 07-cv-12153, 2015 WL 10002943, at *3–4 (D. Mass. Aug. 17, 2015)).

**B. Discussion**

Canon's motion to preclude seeks (1) preclusion of certain opinions of one of Vermont Mutual's experts, Christopher Swan, on timeliness grounds, and (2) exclusion of all opinions of all three of Vermont Mutual's experts on reliability grounds. [ECF No. 32 at 14–18].

**1. Exclusion for Untimeliness**

Canon contends that Christopher Swan's opinion concerning the specific mechanism by which the printer caught fire—specifically, that it resulted from a "catastrophic failure" of the C6 capacitor within the printer's circuit board—should be excluded under Federal Rule of Civil Procedure 37(c)(1) because that opinion was not included in his expert report. [ECF No. 32 at 14–16]. Canon asserts that Mr. Swan's expert report made no mention of the C6 capacitor, that

he admitted his report was "only eliminating the external evidence as being a cause," and that he first expressed an opinion about the role of the C6 capacitor during his deposition over six weeks later. [Id. at 3–5, 15]. Canon further argues that Mr. Swan's late disclosure was not justified because the information underlying his opinion concerning the C6 capacitor had been available to him for over four years by the time of his deposition, and that the late disclosure caused Canon prejudice by preventing it from submitting timely expert rebuttal evidence. [Id. at 3–5].

Vermont Mutual does not dispute that Mr. Swan's report expressed no opinion about the C6 capacitor but argues that there was no unfair surprise because another one of Vermont Mutual's experts, Andrew Diamond, offered the same opinion in his own expert report. [ECF No. 33 at 3–10]. Vermont Mutual further argues that Mr. Swan offered this opinion only because Canon's counsel's questioning elicited it through deposition questioning, and that Vermont Mutual does not necessarily intend to elicit the same opinion at trial. [Id.].

Although the Court recognizes that Mr. Swan stated this opinion in response to Canon's explicit questioning and does not believe either Mr. Swan or Vermont Mutual acted in bad faith, the Court nonetheless agrees with Canon that Mr. Swan should not be allowed to testify to an opinion omitted from his expert report. This late disclosure was not "substantially justified." Fed. R. Civ. P. 37(c)(1). Mr. Swan had full access to the photograph upon which he based the C6 capacitor opinion during his original analysis, see [ECF No. 31-6 at 8–15, 36], and he admitted he had "ample opportunity to inspect the product and the scene . . . prior to drafting [his] report," [id. at 12]. Vermont Mutual does not provide any reason why, if it intends to elicit this opinion from Mr. Swan at trial or rely on it at summary judgment, it could not reasonably have been disclosed earlier. And although the Court does not see great prejudice to Canon, it also cannot conclude that the late disclosure was "harmless." Fed. R. Civ. P. 37(c)(1). At the

very least, the late disclosure—which occurred after the deadline for disclosing rebuttal expert evidence—prevented Canon from preparing expert evidence or deposition questions specifically concerning Mr. Swan's qualifications or bases to render a conclusion about the C6 capacitor. [ECF No. 25]; [ECF No. 34 ¶ 26].

Vermont Mutual's arguments are unavailing. The fact that a different expert timely concluded in his report that he believed the C6 capacitor was the cause of the fire, [ECF No. 33 at 3–10], does not mean that Mr. Swan should be able to testify similarly or that Vermont Mutual can rely on Mr. Swan's late disclosed opinion, even if duplicative of other testimony, at summary judgment. Rule 26(a)(2) requires disclosure on an expert-by-expert basis. See Fed. R. Civ. P. 26(a)(2) (requiring each expert witness to submit a report "prepared and signed by the witness" and containing "a complete statement of all opinions the witness will express"). Although Mr. Diamond's previous identification of the C6 capacitor theory lessens the prejudice from Mr. Swan's late disclosure, it remains an untimely disclosure. Nor does the fact that Mr. Swan's late-disclosed opinion was responsive to counsel's deposition questioning, [ECF No. 33 at 3–4, 7–8], provide a justification for allowing Vermont Mutual to rely on that opinion at summary judgment or trial. While Vermont Mutual is correct that an expert's responsive deposition testimony may sometimes stray beyond the scope of his report, that fact does not give a party license to use new opinions first expressed in such testimony. See, e.g., Citation Ins. Co. v. Broan-NuTone LLC, 793 F. Supp. 3d 299, 309–11 (D. Mass. 2025) (excluding opinions disclosed for first time during deposition).

Accordingly, the Court will preclude Mr. Swan from testifying at trial as to any opinion specifically concerning the C6 capacitor's role in causing the fire, and the Court will not consider any such opinions from Mr. Swan in connection with Canon's motion for summary judgment.

To be clear, this ruling does not apply to Mr. Diamond's opinions concerning the same subject matter, which were timely disclosed, nor to Mr. Swan's opinions concerning any other subject matter.

### 2. Exclusion for Unreliability

Canon further seeks to fully exclude the opinions of all of Vermont Mutual's experts—Christopher Swan, Sean Sullivan, and Andrew Diamond—under Federal Rule of Evidence 702 and Daubert, 509 U.S. 579, arguing that these experts' opinions should be excluded because they offer "no evidence of a specific defect in the printer at issue" and instead provide "mere possibilities regarding how, when, and why the circuit board at issue allegedly failed." [ECF No. 32 at 18].

Canon's arguments are unavailing because they go to the evidentiary sufficiency, rather than the reliability, of Mr. Swan's, Mr. Sullivan's, and Mr. Diamond's opinions. Mr. Swan's analysis involved an investigation of potential alternative ignition sources, and his conclusion was that no such sources other than the Printer could have started the fire. [ECF No. 33-2 at 50]. Mr. Sullivan's analysis involved examining the site and burn patterns to determine the fire's point of origin and ignition source, and his conclusions were that the fire originated at and was ignited by the Printer. [ECF No. 33-1 at 15–17]. And Mr. Diamond's analysis involved examining the remains of the printer to identify the mechanism by which it ignited, and his conclusion was that the fire was likely the result of a component failure of the C6 capacitor within the Printer's printed circuit board. [ECF No. 33-3 at 11–12]. Canon's motion does not

identify specific defects with the methodologies underlying any of these conclusions,[1] nor does it challenge the experts' educational or professional qualifications. Instead, Canon faults Vermont Mutual's experts for the opinions they do not offer: "how, when, and why the circuit board at issue allegedly failed." [ECF No. 32 at 18]. The Court's role as gatekeeper under Daubert, however, is to ensure that an offered opinion "rests on a reliable foundation and is relevant to the task at hand," Hoover v. Hyatt Hotels Corp., 99 F.4th 45, 58 (1st Cir. 2024) (quoting United States v. Vargas, 471 F.3d 255, 261 (1st Cir. 2006)), not to police whether it goes far enough to prove Vermont Mutual's case. See Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F.3d 68, 81 (1st Cir. 2002) ("[T]he [expert] testimony's accorded weight are in the jury's province.").

To the extent Canon contends that opinions on these issues constitute necessary foundation for the experts' separate conclusions, Canon does not explain why that would be the case. Nor does the Court see why Vermont Mutual's experts must be able to answer "how, when, [or] why the circuit board at issue allegedly failed," [ECF No. 32 at 18], to reliably opine on the fire's point of origin, the existence of alternative ignition sources, or whether (not why) a component failure occurred, as they have here. [ECF No. 33-2 at 50]; [ECF No. 33-1 at 15–17]; [ECF No. 33-3 at 11–12].

In its reply brief, Canon frames its argument as concerning the conclusions' helpfulness to the jury, asserting that because the experts do not identify a specific defect, "the only assistance they provide to a jury is to speculate" about pertinent issues. [ECF No. 35 at 7].

---

[1] Although Canon does raise certain methodological challenges to Mr. Diamond's opinion in its reply brief, [ECF No. 35 at 5–7], "[a]rguments available at the outset but raised for the first time in a reply brief need not be considered," St. John v. Garland, 82 F.4th 42, 43 n.1 (1st Cir. 2023) (alteration in original). The Court therefore deems these arguments concerning Mr. Diamond's methodology waived and will not consider them.

Although Daubert and Rule 702 do require that testimony be "helpful to the trier of fact" by assisting it in "understand[ing] or determin[ing] a fact in issue," Earley Info. Sci., Inc. v. Omega Eng'g, Inc., 575 F. Supp. 3d 242, 245 (D. Mass. 2021) (quoting Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998)), the testimony need only be "incremental[ly]" helpful to meet this standard. Id. Here, the Court disagrees with Canon that the experts' conclusions must identify a specific defect to be helpful to the trier of fact. Where the fire began, whether there were alternative ignition sources, and whether there was a component failure in the printer are certainly the types of issues about which expert testimony will be helpful to a jury tasked with determining whether Canon is liable for causing the fire at issue. The Court will therefore deny Canon's Daubert challenge.

## III. MOTION FOR SUMMARY JUDGMENT

The Court now turns to Canon's motion for summary judgment, [ECF No. 30]. For the reasons discussed supra, in resolving this motion, the Court will consider all of Vermont Mutual's experts' testimony save for Mr. Swan's conclusion concerning the C6 capacitor.

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is considered "genuine" when "the evidence of record permits a rational factfinder to resolve it in favor of either party." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4–5 (1st Cir. 2010) (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A fact is considered "material" when "its existence or nonexistence has the potential to change the outcome of the suit." Id. at 5 (citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must direct [the Court] to specific evidence in the record that would be admissible at trial." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (alteration in original) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Once the moving party has laid out its basis for summary judgment, the burden shifts to the party opposing summary judgment to demonstrate, "with respect to each issue on which she would bear the burden of proof at trial, . . . that a trier of fact could reasonably resolve that issue in her favor." Borges, 605 F.3d at 5 (first citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); and then citing DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

On a motion for summary judgment, the Court reviews "the entire record in the light most hospitable to the party opposing summary judgment." Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). Where inferences are to be drawn from the proffered facts, those inferences "must be viewed in the light most favorable to the party opposing the motion." Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)). The Court, however, "safely may ignore 'conclusory allegations, improbable inferences, and unsupported speculation.'" Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (quoting Medina-Munoz, 896 F.2d at 8).

**B. Discussion**

Vermont Mutual asserts claims for (1) negligence, and (2) breach of warranty. [ECF No. 1-1 ¶¶ 12–19]. Canon seeks summary judgment as to both claims. [ECF No. 30].

**1. Negligence**

To succeed on a claim for negligence under Massachusetts law, "a plaintiff must show that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury and (4) the plaintiff suffered actual damage or injury." Labranche v. U.S. Liberty Ins. Co., 786 F. Supp. 3d 262, 272 (D. Mass. 2025) (quoting Hale v. Pan Am Railways, Inc., 305 F. Supp. 3d 252, 256 (D. Mass. 2018)). In the context of products sold in commerce, "liability exists 'when a product's manufacturer or seller has failed to use reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of harm.'" One Beacon Ins. Co. v. Electrolux, 436 F. Supp. 2d 291, 295 (D. Mass. 2006) (quoting Colter v. Barber-Greene Co., 525 N.E.2d 1305, 1313 (Mass. 1988)). "Manufacturers may breach their duty of reasonable care when there is a design defect, manufacturing defect, or improper warnings on a product that leads to an injury of a customer." Lama-Wolobah ex rel. Est. of H.W. v. Paqui, LLC, No. 24-cv-12016, 2026 WL 907418, at *6 (D. Mass. Mar. 31, 2026) (first citing Corrigan v. Covidien LP, No. 22-cv-10220, 2022 WL 17094687, at *3 (D. Mass. Nov. 21, 2022); and then citing Evans v. Lorillard Tobacco Co., 990 N.E.2d 997, 1010 (Mass. 2013)).

Canon seeks summary judgment on Vermont Mutual's negligence claim on two grounds: (1) that Vermont Mutual has failed to identify a specific product defect as necessary to support the breach and causation elements of its claim, and (2) that Vermont Mutual has failed to show

that the Printer was in the same condition at the time of the accident as when it was sold by Canon. [ECF No. 32 at 16–20].

i. Identification of a Defect

Vermont Mutual pursues only a manufacturing defect theory in support of its negligence claim. [ECF No. 33 at 10–11]. "A defect from manufacturing, as opposed to design, occurs when a product differs from identical products issued from the same manufacturer." Arbella Mut. Ins. Co. v. Field Controls, L.L.C., No. 16-cv-10656, 2019 WL 1489877, at *2 (D. Mass. Apr. 4, 2019) (quoting Wasylow v. Glock, Inc., 975 F. Supp. 370, 377 (D. Mass. 1996)). "In order to establish a manufacturing defect, a plaintiff must demonstrate that there is a 'deviation from the design [that] rendered the product unreasonably dangerous and therefore unfit for its ordinary purposes.'" Burnham v. Wyeth Lab'ys Inc., 348 F. Supp. 3d 109, 112 (D. Mass. 2018) (alteration in original) (quoting Back v. Wickes Corp., 378 N.E.2d 964, 970 (Mass. 1978)).

Canon argues that it is entitled to summary judgment because Vermont Mutual "has brought forward no evidence of a specific defect in the printer at issue," [ECF No. 32 at 18], as none of its experts have "offer[ed] any specific conclusions of how the C6 capacitor failed, or how such a failure would have ignited and started the fire," [id. at 16]. In support, it cites testimony from all three of Vermont Mutual's experts admitting that they cannot identify what specific manufacturing defect caused the relevant component to fail. [ECF No. 31-4 at 3 (Sullivan Deposition: "Q: Okay. What was the defect in the circuit board that caused the fire? A: I don't know. I would defer to Mr. Swan and Mr. Diamond.")]; [ECF No. 31 at 5–6 (Diamond Deposition: "Q: You can't determine one way or the other what the failure was? A: It's impossible.")]; [ECF No. 31-6 at 16 (Swan Deposition: "Q: What is the defect in the circuit board? A: I do not know.")]. Canon contends that, absent expert identification of a specific

defect, "[n]ot a single valid evidentiary fact has been produced in support of Plaintiff's claim that a defect existed in the PIXMA Pro-100 printer at the time that it left Canon USA's control." [ECF No. 32 at 20].

In response, Vermont Mutual argues that it is not required to "prove the exact cause of the accident or disprove every possible cause," [ECF No. 33 at 11], but rather must only adduce evidence from which a reasonable jury could infer that some defect existed and led to the accident. [Id. at 11–13]. In support, it cites several cases in which Massachusetts courts and other sessions of this Court have denied summary judgment against manufacturing defect claims where experts identified which component failed but did not identify the specific defect that led the component to fail. [Id. (collecting cases)].

In Netherlands Insurance Co. v. HP, Inc., 646 F. Supp. 3d 139 (D. Mass. 2022), a case cited by Vermont Mutual that also involved a printer fire, the defendant argued it was entitled to summary judgment because "the plaintiffs have not identified a specific defect or component failure in the 4250n printer" that led to the fire. Id. at 153. The court rejected that argument because the plaintiff had "put[] forth a theory of the fire that identifies the [printed circuit board] in the 4250n printer as the locus of the defect or component failure while eliminating competing theories." Id. Likewise, in Massachusetts Property Insurance Underwriting Ass'n v. LG Electronics U.S.A., Inc., 902 F. Supp. 2d 173 (D. Mass. 2012) (MPIUA), a case involving an allegedly defective microwave oven, the court found that even though the plaintiff's expert "did not pinpoint the precise source of the ignition within the microwave oven . . . no such specificity is required." Id. at 177. The court found that the expert's conclusion that a malfunction occurred at a specified location within the oven was sufficient to "support[] a reasonable inference that some defect in the microwave oven, present at the time of sale, caused the fire." Id. Finally, in

Collins v. Sears, Roebuck & Co., 583 N.E.2d 873 (Mass. App. Ct. 1992), a case involving an allegedly defective dryer that caught fire, the Massachusetts Court of Appeals upheld a jury verdict for the plaintiffs even though their expert "was unable in his testimony to pinpoint the exact defect within the dryer's electrical system." Id. at 874.[2]

These cases persuade the Court that Vermont Mutual's experts have adduced facts sufficient to survive summary judgment. Here, as in Netherlands, MPIUA, and Collins, Vermont Mutual's experts have identified a precise location and mechanism for the malfunction that started the fire—a component failure of the C6 capacitor—and they have mustered evidence to support their identified source. See generally [ECF No. 33-3]; see Netherlands, 646 F. Supp. 3d at 153; MPIUA, 902 F. Supp. 2d at 177; Collins, 583 N.E.2d at 874. As in those cases, the fact that Vermont Mutual has not or cannot identify the specific defect that led the C6 capacitor to fail does not prevent a reasonable jury from inferring from the circumstances that such a defect existed. See Netherlands, 646 F. Supp. 3d at 153; MPIUA, 902 F. Supp. 2d at 177; Collins, 583 N.E.2d at 874. If nothing else, a reasonable jury would be entitled to infer that the printer at issue "deviat[ed] from the design" of an ordinary printer, Burnham, 348 F. Supp. 3d at 112 (quoting Back, 378 N.E.2d at 970), because an ordinary printer's circuit board does not ordinarily spontaneously catch fire. See Coyne v. John S. Tilley Co., 331 N.E.2d 541, 545 (Mass. 1975) ("The tribunal of fact is permitted, if it sees fit, to draw from the occurrence itself of an unusual event the conclusion that it would not have happened unless the defendant had

---

[2] See also One Beacon Ins., 436 F. Supp. 2d at 295 (denying summary judgment where plaintiff's expert identified the component that failed but did not specify the cause of failure).

been negligent." (quoting Evangelio v. Metro. Bottling Co., 158 N.E.2d 342, 345 (Mass. 1959))).[3]

In reply, Canon cites a handful of cases it argues are to the contrary, [ECF No. 35 at 2–3], but the Court finds each of them either distinguishable or unpersuasive. Canon principally relies upon Liberty Mutual Insurance Co. v. Broan-NuTone LLC, in which the court granted summary judgment on a manufacturing defect claim involving an allegedly defective ceiling fan. 731 F. Supp. 3d 205, 219–20 (D. Mass. 2024). The plaintiff in Liberty Mutual, however, did not contend that a one-off component failure led to the fire. Instead, it identified an inherent trait of the fan at issue—a "free-hanging wire in the connection junction box"—without any indication that the trait was "unique to this one fan." Id. at 219. Here, by contrast, Vermont Mutual has offered evidence that the fire was ignited by a spontaneous component failure which does not occur in a typical printer, thus allowing for the reasonable inference that the printer at issue deviated in some way from the norm.

Canon also cites Enrich v. Windmere Corp., in which the Supreme Judicial Court upheld a directed verdict against the plaintiff's manufacturing defect claim because the plaintiff failed to adduce evidence of a defect. 616 N.E.2d 1081, 1084 (Mass. 1993). In Enrich, however, the plaintiff failed to present any expert testimony explaining how the fan at issue caught fire. Id. Most notably, the court in Enrich explicitly differentiated Collins on the basis that Collins

---

[3] Tort law has long recognized the permissibility of such inferences under the doctrine of res ipsa loquitur. See Ryba v. LaLancette, 417 F. Supp. 2d 199, 207 (D. Mass. 2006) ("The doctrine of res ipsa loquitur permits a trier of fact to draw an inference of negligence . . . even when he cannot identify the specific breach of duty that caused the accident, if the accident is of the kind 'that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes including the conduct of the plaintiff are sufficiently eliminated by the evidence.'")

involved expert testimony connecting the fire to the "electrical system within [the] dryer." Id. The instant case fits the mold of Collins, not Enrich: Vermont Mutual has offered expert testimony connecting the fire to a failure of the C6 capacitor within the printer's printed circuit board. See generally [ECF No. 33-3]. That testimony is sufficient evidence of a defect to survive summary judgment.

ii. Responsibility for the Defect

In any negligence case under Massachusetts law, the plaintiff must "show a greater likelihood that his injury was caused by the defendant's negligence than by some other cause." Coyne, 331 N.E.2d at 547. In the context of a manufacturing defect theory, this rule means that if "the accident occurred after the defendant has surrendered control of the instrumentality involved, it is incumbent upon the plaintiff to show that it had not been improperly handled by intermediate handlers." Carney v. Bereault, 204 N.E.2d 448, 452 (Mass. 1965) (citing Evangelio, 158 N.E.2d at 347).

Canon argues that Vermont Mutual has offered no evidence from which a reasonable jury could conclude that the Printer was in the same state when Canon sold it as it was when the accident occurred. [ECF No. 32 at 19–20]. Canon points to the fact that "the printer at issue was purchased secondhand via Facebook Marketplace," and that Mr. Valerius—the printer's buyer—has "no information about the age of the printer, whether the printer had been repaired or mistreated, and who else may have been in the chain of ownership of the second-hand printer." [Id.]. In response, Vermont Mutual points to (1) deposition testimony from Mr. Valerius that the printer appeared to be "in pristine condition" and worked without issue when he purchased it, and (2) evidence that an ordinary user of the printer would have no reason to access or tamper

with the C6 capacitor, which is "located deep within the printer" and "entirely under or surrounded by [a] black polymer." [ECF No. 33 at 14–15].

The Court finds that Vermont Mutual has adduced sufficient evidence for a reasonable jury to conclude that the printer "had not been improperly handled by intermediate handlers." Carney, 204 N.E.2d at 452 (citing Evangelio, 158 N.E.2d at 347). Canon points to no evidence of tampering with the printer's circuit board, and there is record evidence that such tampering would be difficult and pointless. [ECF No. 33-8 at 3]; [ECF No. 33-9 at 3–4]. As Vermont Mutual points out, many courts have found similar evidence sufficient to allow a jury to conclude that the instrumentality was not improperly handled. See, e.g., Arbella, 2019 WL 1489877, at *4 (finding the presence of "two protective layers" covering the malfunctioning component sufficient for a reasonable jury to conclude an absence of improper handling); Collins, 583 N.E.2d at 874 (finding the absence of "evidence that the [malfunctioning component] was ever touched or worked on" sufficient to allow a reasonable inference that the component "was in the same condition at the time of the fire as it was in at the time of sale"); Coyne, 331 N.E.2d at 546 (finding that "evidence was sufficient to warrant exclusion of negligence by intermediate handlers as a cause of the ladder's collapse" because observers had "noticed no defects" and "the ladder had appeared new to the plaintiff").[4] Accordingly, the Court will deny summary judgment as to Vermont Mutual's negligence claim.

---

[4] The cases Canon cites involved materially different evidence not present here. See Brown v. Husky Injection Molding Sys., Inc., 751 F. Supp. 2d 298, 304 (D. Mass. 2010) (granting summary judgment where unrebutted testimony established that product differed at time of manufacture and time of accident); Price v. Gen. Motors Corp., 931 F.2d 162, 165–66 (1st Cir. 1991) (affirming grant of summary judgment where plaintiff conceded that car's transmission was "repaired or replaced," and expert admitted that failing parts could have been third-party replacements).

### 2. Breach of Warranty

Under Massachusetts's implied warranty of merchantability, "[a] seller breaches its warranty obligation when a product that is defective and unreasonably dangerous . . . for the ordinary purposes for which it is fit causes injury." Haglund v. Philip Morris, Inc., 847 N.E.2d 315, 322 (Mass. 2006) (citation omitted). Although Massachusetts has "declined to allow claims for strict liability in tort for defective products," its implied warranty of merchantability "establish[es] liability as comprehensive as that to be found in other jurisdictions that have adopted the tort of strict product liability." Com. v. Johnson Insulation, 682 N.E.2d 1323, 1326 (Mass. 1997). A claim for breach of the implied warranty of merchantability "stands on a different footing" from a negligence claim, as it "focus[es] on the product rather than on the conduct of the manufacturer or the user." Wasylow, 975 F. Supp. at 377. That said, "negligence and breach of warranty of merchantability are somewhat intertwined," Arbella, 2019 WL 1489877, at *5, and the Supreme Judicial Court has recognized that "in a products liability case . . . a finding of negligence necessarily encompasses a breach of warranty," Aleo v. SLB Toys USA, Inc., 995 N.E.2d 740, 752 (Mass. 2013) (citing Hayes v. Ariens Co., 462 N.E.2d 273, 275 (Mass. 1984), overruled on another ground by Vassallo v. Baxter Healthcare Corp., 696 N.E.2d 909, 922–24 (Mass. 1998)). Here, because the Court has found that Vermont Mutual has offered sufficient evidence to sustain its negligence claim, it follows that its claim for breach of the implied warranty of merchantability survives as well. The Court will therefore deny summary judgment as to Vermont Mutual's breach of warranty claim.[5]

---

[5] In their briefing, both parties assume that Vermont Mutual has also asserted a claim under the implied warranty of fitness for a particular purpose. [ECF No. 33 at 18]; [ECF No. 35 at 9–10].

## IV. CONCLUSION

For the foregoing reasons, Canon's motion to preclude expert testimony, [ECF No. 30], is **GRANTED IN PART** to the extent that Mr. Swan may not testify at trial as to any opinion specifically concerning the C6 capacitor's role in causing the fire, and otherwise **DENIED**. Canon's motion for summary judgment, [id.], is **DENIED**.

**SO ORDERED.**

August 18, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

Vermont Mutual's complaint, however, does not assert such a claim or allude to the implied warranty of fitness for a particular purpose in any way. See [ECF No. 1-1]. Accordingly, the Court finds the parties' reference to this implied warranty misplaced. If Vermont Mutual wishes to assert such a claim, it must seek leave to amend its complaint. See Fed. R. Civ. P. 15(a)(2); Fed. R. Civ. P. 16(b)(4). The Court notes, however, that nothing in the record appears to indicate that Mr. Valerius had a "particular purpose" which "differ[ed] from an ordinary purpose" for using a printer, which would foreclose such a claim. Liberty Mut., 731 F. Supp. 3d at 220 (citing Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc., 573 F. Supp. 2d 372, 381 (D. Mass. 2008)).